IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JESUS GONZALEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-0415 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Before the Court in this social security appeal are Plaintiff's Motion for Summary Judgment (Instrument No. 15), and Defendant's Cross-Motion for Summary Judgment (Instrument No. 16-2). Having considered the motions, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Cross-Motion for Summary Judgment is GRANTED. Therefore, the decision of the Commissioner of the Social Security Administration is AFFIRMED.

I.     **Introduction**

Plaintiff Jesus Gonzalez ("Gonzalez") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405 (g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits. Gonzalez argues that the Administrative Law Judge's ("ALJ") decision is flawed because: (1) it is not supported by substantial evidence; (2) and it

contains errors of law.  In contrast, the Commissioner contends that there is substantial evidence in the record to support the ALJ's decision and that the decision comports with applicable law. Namely, the Commissioner asserts that the ALJ properly determined that Gonzalez is not disabled by diabetes and high blood pressure, that the ALJ does not have to rely on a physician's opinion to the contrary, and that the burden of proof is on Gonzalez to prove his disability through medically determinable evidence.

## II.  Administrative Proceedings

On May 17, 2004, Gonzalez applied for disability insurance benefits claiming an inability to work since August 30, 2003, as a result of diabetes and high blood pressure that made him weak and dizzy.  (Tr. 12-14).  The Social Security Administration denied his application at the initial and reconsideration stages.  (Tr. 26, 34).  After that, Gonzalez requested a hearing before an ALJ.  The Social Security Administration granted his request and ALJ, Richard Abrams, scheduled a hearing for May 4, 2005.  (Tr. 17).  However, the hearing was rescheduled for August 26, 2005, because Gonzalez was not represented but desired counsel.  (Tr. 320-324).  After the August hearing, on October 28, 2005, the ALJ issued a decision finding Gonzalez not disabled.  (Tr. 16).

Gonzalez sought review of the ALJ's adverse decision with the Appeals Council.  The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest.  20 C.F.R. § 404.970; 20 C.F.R. § 416.1470.  After considering Gonzalez's contentions in light of the applicable regulations and evidence, the Appeals Council, on December 13, 2005, denied the request

for review and the ALJ's decision thus became final. (Tr. 3).

Gonzalez filed a timely appeal of the ALJ's decision.  He then filed a Motion for Summary Judgment (Document No. 15).   The Commissioner then filed a Cross-Motion for Summary Judgment in response. (Document No. 16-2).

## III.   Standard of Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards."  *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. 405(g).  The Act specifically grants the district court the power to enter judgment upon the pleadings and transcript "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  *Id*.  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co., v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.   Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability.  *Johnson*, 864 F.2d at 344.  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).  The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."  *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

4

The Commissioner applies a five-step sequential process to decide disability status:

1.    If the claimant is presently working, a finding of "not disabled" must be made;

2.    If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;

3.    If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.    If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.    If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Legget v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).  Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists.  *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).     If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work.  *Id.*  Once the Commissioner shows that other jobs are available, the burden again shifts to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.  *Legget*, 67 F.3d at 564**.**

Here, the ALJ determined that Gonzalez was not disabled at step five.  In particular, the ALJ determined that Gonzalez was not presently working (step one); that his diabetes and high blood pressure were "severe" (step two); but that these conditions, when considered both singly and in combination, did not meet or equal an impairment listed in Appendix 1 of the regulations (step

5

three); that Gonzalez's impairments did not preclude him from doing his past work as a machine operator (step four); and that his impairments also did not prevent him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity (step five).

In this appeal, the Court must determine whether substantial evidence supports the finding in step four of the sequence that Gonzalez's impairments do not prohibit him from engaging in his past work, and whether the ALJ used the correct legal standards in arriving at that conclusion.   In making this determination, the Court must consider whether Gonzalez's peripheral neuropathy was improperly ignored, and whether Gonzalez received adequate warning that his right to representation would be waived by proceeding with the August 26, 2005, hearing.

V.      Discussion

### A. There is substantial evidence to support the ALJ's decision

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

### 1. Objective Medical Facts

The objective medical evidence shows that Gonzalez suffers from diabetes mellitus and high blood pressure resulting in weakness and depression. (Tr. 99, 106). On July 26, 2004, Gonzalez was examined by Dr. D.P. Sunkara for purposes of a disability determination.  Gonzalez complained of severe weakness, intense chest pain, and stiffness. (Tr. 99).  Dr. Sunkara reported that Gonzalez

6

suffered from Diabetes Mellitus type 2 since at least 1998, which remained uncontrolled due to his financial inability to regularly check his blood sugar.  *Id.*  Dr. Sunkara reported Gonzalez had symptoms of neuropathy such as a tingling sensation, but concluded that his present illness is characterized by several symptoms with no specific details.  *Id.*  Dr. Sunkara concluded that Gonzalez had diabetes with a history of peripheral neuropathy, general aches and pains, peripheral vascular disease, and claims of low back pain.  *Id.*  At that time Gonzalez was taking six different medications.  *Id.*  However, Dr. Sunkara reported that Gonzalez was able to sit, stand and move around, that his hearing and speech were normal, and that he had grip strength and dexterous ability, and that his intellectual and coordination functions were normal.  (Tr. 100-101).  On July 27, 2004, Gonzalez underwent a diagnostic imaging procedure of his chest that found he had a normal cervical spine with the exception of early degenerative change at the C6-7 level.  (Tr. 102).  However, there were no signs of end organ damage or changes in the renal or cardiac systems.  (Tr. 101).

Subsequently, on August 16, 2004, Gonzalez underwent a psychological disability determination because of his social isolation and crying spells.  (Tr. 105).  Gonzalez claimed that he stopped working due to his illnesses, and that as a result, he has been irritable, weak, and suicidal.  (Tr. 106).  Dr. Mark Lehman concluded he suffered from depression due to his physical ailments for which he was already receiving medication from his primary physician.  *Id.*  However, Dr. Lehman's diagnosis was that Gonzalez was mostly capable and independent in his daily activities, and that his depressive condition would likely improve given psychiatric treatment and medication.  (Tr. 109).  Dr. Lehman also assessed Gonzalez as capable of being able to manage benefit payments and capable of understanding the meaning of filing for benefits.  (Tr. 110).

On October 23, 2004, Gonzalez was examined by Dr. Thomas Masciangelo because he was

complaining of frequent vomiting and chills.  (Tr. 134).  He concluded that there were no abnormalities in Gonzalez's spine or vertebrae.  (Tr. 128).  Dr. Masciangelo concluded in a letter dated June 12, 2005, that Gonzalez is unable to sustain gainful employment because of the weakness he suffers from his illnesses.  (Tr. 216).  Gonzalez had numerous doctor, clinic, and laboratory appointments between October 2004 and July 2005 and was prescribed several different medications.  (Tr. 244-252).  On December 14, 2004, Gonzalez underwent imaging and X-rays of his chest, arms and fingers all with normal results.  (Tr. 254-256).  Additionally, vascular labs conducted in November 2004 were also normal.  (Tr. 258-260).

Having examined the objective medical evidence in the record, it is clear that Gonzalez suffers from diabetes mellitus and hypertension. The evidence also shows that Gonzalez suffers from depression, but the ALJ found those conditions not to be severe.  However, none of the objective medical facts are sufficient to establish that Gonzalez is disabled as defined by the Act.  Therefore, the objective medical evidence factor supports the ALJ's decision.

### 2. Diagnosis and Expert Opinion

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981).

There are several expert medical opinions on the record, including the opinions of Dr. Masciangelo and Dr. Lehman as well as other physicians from the Strawberry Clinic and Ben Taub Hospital.  The record also contains the opinion of the medical expert who testified at the hearing.

The ALJ discussed the opinions of all of these physicians in his decision.

On July 26, 2004, Dr. Sunkara conducted an initial exam in order to make a disability determination and concluded that Gonzalez suffered from diabetes, peripheral vascular disease, and general aches and pains. (Tr. 100). Dr. Sunkara reported that Gonzalez had a history of peripheral neuropathy, but did not make a conclusive finding as to whether he currently suffered from the disease. *See id.* However, Dr. Sunkara reported normal conditions in Gonzalez's neck, chest, muscoskeletal and cardiovascular systems. *Id.*

On June 13, 2005, Dr. Masciangelo wrote a letter stating that Gonzalez is unable to "sustain any type of gainful employment." (Tr. 216). However, for the ALJ to give deference to a medical opinion, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). The ALJ gave little weight to Dr. Masciangelo's assessment of Gonzalez's disability because he concluded that it was unsupported by objective evidence. (Tr. 13). He also found that Dr. Masciangelo's medical reports conflicted with his letter as they did not provide any evidence to support the limitations he claimed Gonzalez had. *Id.* Further, regardless of the opinions, diagnoses, and medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Therefore, the ALJ was within his discretion to accord little weight to Dr. Masciangelo's opinion concerning Gonzalez's ability to work.

Dr. Albert Oguejifor was called to testify as an expert medical witness, and after examining the exhibits, concluded that although Gonzalez suffered from diabetes and hypertension, his conditions were not disabling. (Tr. 306). Additionally, Dr. Oguejifor disagreed with Dr.

Masciangelo's June 13, 2005, letter because he did not believe that its conclusion of Gonzalez severe limitations was supported by the medical records.  (Tr. 309).  Given the ALJ's reasoned, proper rejection of the conclusory and unsupported opinion of Dr. Masciangelo, as well as the other medical opinions in the record, the diagnosis and expert opinion factor also weighs in favor of the ALJ's decision.

### 3. Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends.  Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled.  *Cook*, 750 F.2d at 395.  The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423.  The statute provides that allegations of pain do not constitute conclusive evidence of disability.  42 U.S.C. § 423.  There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain.  *Id.*  Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence in the record.  *Id.* Under the Social Security Act, pain is a disabling condition only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."  *Sellers*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)).  Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform.  *See Scott v Shalala*, 30 F.3d 33, 35 (5th Cir. 1994).  The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant.  *Hames*, 707 F.2d at 166.

Gonzalez testified at his hearing before the ALJ that he is constantly tired and can barely care for himself, and at one point during the hearing he had to stand up because he was feeling sick. (Tr. 294-297). He answered questions about his work history and how his conditions affect his daily life. (Tr. 297). When the ALJ asked him about the pain he was in, Gonzalez testified that his neck, legs, and bones hurt and that he sometimes gets nauseous. *Id.* He testified that he cannot hear and that when he tries to work his heart beats fast and he has to go lay down. (Tr. 298).

Lupe Fuentas, Gonazalez's common-law wife, testified that he has pain in his neck, feet, and legs and that he cannot hear in his right ear. *Id.* Fuentas then testified about Gonzalez's daily activities and how he takes out the trash and goes to the store with her when he feels able, but that he cannot exert himself too much before he must lay down. (Tr. 302).

However, the objective medical evidence concerning Gonzalez's conditions in this case is inconsistent with his complaints of totally disabling pain. His examinations show that he suffers from diabetes and general aches and pains, but that his hearing, walking ability, and dexterous abilities are normal. (Tr. 101). There is no end organ damage resulting from his diabetes, and while he has chest pains, he does not have any varicosities or recurrent ulcerations. *Id.* Credibility determinations, such as that made by the ALJ in this case in connection with Gonzalez's subjective complaints of pain, are generally within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (explaining that the ALJ has the discretion to evaluate the credibility of medical experts and lay witnesses and weigh their opinions accordingly). Therefore, because the record shows that the ALJ made and supported his credibility determination, this factor also supports the ALJ's decision.

### 4. Education, Work History, and Age

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

As of the date of his administrative hearing, Gonzalez was 47 years old, had twelve years of education in Mexico as well as two additional years of study in accounting, and had past work experience as a forklift operator. (Tr. 299-300). A vocational expert ("VE") testified at the hearing concerning Gonzalez's past employment and its classification according to the Dictionary of Occupational Titles and the Selected Characteristics of Occupations. (Tr. 311-313). Based on the ALJ's determination of Gonzalez's residual functional capacity, he posed a hypothetical to the VE about Gonzalez's ability to engage in his past work and other work. *Id.* The hypothetical asked what types of jobs he could perform and in what numbers they were found in the local and national economy. *Id.* The VE then explained that with his functional capacity, Gonzalez could perform his past work as a machine operator, and that he also could perform jobs such as a conveyor operator, production solderer, or small products assembler. Gonzalez then asked the VE how he could do those jobs if he could not use his hands and if he had to lay down during the day to which the VE responded that he would not be able to do the jobs he had suggested if that were the case. (Tr. 314-315).

However, the ALJ properly found that Gonzalez's tiredness and weakness were not in fact a severe impairment and that the medical evidence did not support his claims of total disability. Therefore, because the ALJ properly considered Gonzalez's education, age, and work history in

determining what other jobs in the national economy he could perform, this factor also supports the ALJ's decision.

## B. There were no errors of law in the ALJ's decision

Gonzalez does not articulate the alleged errors of law that he states as an issue presented in his motion for summary judgment.  However, in the motion he discusses the alleged failure of the ALJ to properly develop the record by not adequately warning Gonzalez that he was waiving his right to counsel at the administrative hearing, and by failing to mention his neuropathy in the ALJ's report.  (Instrument 15 at 6).

## 1. The ALJ adequately developed the record with respect to Gonzalez's waiver of counsel

In order to ensure valid waiver of counsel at an administrative hearing, the ALJ must make the claimant aware of how an attorney might help in the proceedings, the possibility of receiving free or contingency-based representation, and the twenty-five percent limit that an attorney may collect of past due benefits as a fee.  *Gullett v. Chater*, 973 F.Supp. 614, 620 (E.D. Tex. 1997).  Notice should be provided in writing before the hearing, and the ALJ should make sure that a claimant who appears *pro se* at his hearing has been made aware of the available options.  *Id.* at 621.  The ALJ has a heightened obligation to develop a full and fair record when a claimant does not have counsel at a hearing.  *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981).  However, even when the right to counsel has not been waived, there must be a showing of clear prejudice or unfairness due to the lack of counsel that would necessitate a reconsideration of the claim.  *Id.*

The notice given by the Social Security Administration to Gonzalez contained the procedure for appealing its decision and included information on how to get help with the appeal.  (Tr. 27). This  notice included information about the possibility of obtaining free legal service or service on

13

a contingency basis.  *Id.*  Additionally, at the initial hearing before the ALJ on May 4, 2005, Gonzalez, through his  wife, requested a reset of the hearing because the counsel he obtained dropped the case a month prior to the hearing. (Tr. 320-323).  At this hearing the ALJ told Gonzalez that he should have the benefit of counsel if he wanted it and was able to obtain it, and that he would also provide an interpreter for Gonzalez at the next hearing.  *Id.* at 323.  At the subsequent hearing on August 26, 2005, an interpreter was present and Gonzalez again appeared without counsel.  (Tr. 290-291).  Gonzalez was given a waiver of counsel form which he signed after it was explained to him by an interpreter.  *Id.*  The interpreter testified that she explained the wavier to Gonzalez and that he understood that he was representing himself at the hearing.  *Id.*  When the ALJ asked Gonzalez if he was representing himself he answered that he guessed he had to because he did not have a lawyer.  *Id.*  During the hearing the ALJ asked Gonzalez about his prior work history, his daily activities, and the pain he suffered from his ailments.  (Tr. 290-299).  Gonzalez's wife also testified corroborating what Gonzalez said about his daily activities as well as about his medication. (Tr. 299-305).  Additionally, after the vocational expert testified about the types of jobs Gonzalez should be able to do, Gonzalez asked him how he would be able to do those jobs if he had to lay down often or if he felt weak and tired.  (Tr. 314-315).

Gonzalez was properly notified of his right to be represented at the administrative hearing and was informed that he could possibly obtain free legal counsel or counsel on a contingency fee basis when his initial application for benefits was denied.  Gonzalez had arranged for representation by counsel at his first hearing and was aware of his right to counsel and of how to obtain it.  The ALJ reset the initial May 4, 2005, hearing because of Gonzalez's desire to be represented.  At the August 26, 2005 hearing the ALJ provided an interpreter to ensure that Gonzalez signed and understood a

waiver of counsel form and asked him on the record if he understood that he was representing himself.  Therefore, the ALJ properly developed the record and adequately informed Gonzalez of his right to representation at the hearing.[1]

### 2. The ALJ adequately developed the record by addressing Gonzalez's neuropathy

The ALJ must adequately develop the record during a disability benefits appeal hearing so that upon further appeal the district court can view and weigh the evidence.  *See Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (explaining that an adequate record is necessary for the district court to determine if the ALJ properly reviewed all the evidence in the case).  However, the ALJ is not required to evaluate in writing every piece of evidence presented during the hearing.  *Id.*  All that is required is a "minimal level of articulation by the ALJ as to his assessment of the evidence."  *Id.* (quoting *Zblewski v. Heckler*, 760 F.2d 160, 166).

In his administrative decision, the ALJ noted Dr. Sunkara's finding that Gonzalez suffered from diabetes and had a history of peripheral neuropathy.  (Tr. 14).  He considered it along with the other medical evidence and concluded that the evidence did not support Gonzalez's subjective claim of total disability.  (Tr. 15).  Neuropathy is mentioned in the medical reports of Dr. Masciangelo (Tr. 112), but was not mentioned in his letter dated June 13, 2005, as a cause of Gonzalez's alleged total disability and inability to sustain gainful employment.  (Tr. 216).

Therefore, because the ALJ is not required to discuss every piece of evidence in his decision, and because the ALJ considered Gonzalez's history of peripheral neuropathy in his assessment of the medical evidence, the ALJ did not fail to adequately develop the record with regard to Gonzalez

---

[1]The fact that Gonzalez filed a subsequent disability application and was awarded benefits pursuant thereto has no bearing on the record before this Court and Gonzalez's challenge to the ALJ's decision in this case.

medical conditions.

**VI.     Conclusion and Order**

Considering the record as a whole, it is the opinion of this Court that the ALJ properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts.  *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982).  As all the relevant factors weigh in favor of, and constitute substantial evidence in support of the ALJ's decision, and as the ALJ used the correct legal standards, the Court

ORDERS that Plaintiff's Motion for Summary Judgement (Instrument No. 15 ) is DENIED, Defendant's Cross-Motion for Summary Judgment (Instrument No. 16-2) is GRANTED, and the Commissioner's decision is AFFIRMED.

Signed at Houston, Texas, this 23 day of July, 2007.

Frances H. Stacy
United States Magistrate Judge